UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ROBERT JOHNSON : | |
| : | PRISONER |
| v. : | Case No. 3:04CV903(CFD) |
| : | |
| TERESA LANTZ, et al.[1] : | |

**RULING AND ORDER**

Plaintiff Robert Johnson ("Johnson") is presently confined at the Carl Robinson Correctional Institution in Enfield, Connecticut. He brings this civil rights action pro se, pursuant to 28 U.S.C. § 1915, alleging that defendants violated his constitutional rights while he was confined at the MacDougall-Walker and Cheshire Correctional Institutions. Johnson claims that various constitutional rights were violated by (1) his placement in segregation, (2) an assault by another inmate, (3) his transfer to another facility, and (4) inadequate medical care. Defendants move to dismiss this action on various grounds. For the reasons that follow, defendants' motion is granted.

I.   Standard of Review

When considering a Rule 12(b) motion to dismiss, the court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Flores v. Southern Peru Copper Corp., 343 F.3d 140, 143 (2d Cir. 2003). Dismissal is inappropriate unless it

---

[1]The named defendants are Commissioner of Correction Theresa Lantz, Wardens Michael Carter and James E. Dzurenda, Correction Captains Gary Wright and Michael Cleaver, Health Services Administrator Pamela Shea, Director of Health Services Patricia Ottolini, Administrative Correctional Major Angel Quiros and Correctional Officer Coro. All defendants are named in their individual and official capacities.

appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  See Davis v. Monroe County Bd. of Educ., 526 U.S. 629, 654 (1999); Sweet v. Sheahan, 235 F.3d 80, 83 (2d Cir. 2000).  "'[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" York v. Association of Bar of City of New York, 286 F.3d 122, 125 (2d Cir.) (quoting Scheuer, 416 U.S. at 236), cert. denied, 537 U.S. 1089 (2002).  In other words, "'the office of a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'"  Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of New York, 375 F.3d 168, 176 (2d Cir. 2004) (quoting Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980)).  However, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss" from being granted.  Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002) (internal quotation marks and citation omitted).

II.     Facts

For the purposes of deciding this motion, the court assumes that the following allegations contained in the complaint are true.

On June 9, 2003, Johnson was transferred to unit L-2 in the MacDougall-Walker Correctional Institution.  The unit was on lockdown at that time.  When Johnson entered the unit, he spoke to defendant Captain Wright and told him that he had been unable to shower before his transfer.  Defendant Wright told Johnson to first "lock-up" and that he would see about getting him a shower later.

Johnson then asked defendant Correctional Officer Coro for his cell assignment. When Johnson entered the assigned cell, he noticed that another inmate's property still was in the cell and informed Coro. Coro told the housing control officer, and Johnson was assigned to another cell. While waiting for the new cell assignment, Johnson and Coro had a verbal exchange. When Johnson reached the new cell, Coro asked for assistance and stated that Johnson refused to "lock up". Johnson received a disciplinary report from Coro for disobeying that order.

At the disciplinary hearing for that charge, Coro repeated his statement that Johnson had refused to "lock up". The disciplinary hearing officer and defendants Cleaver and Wright then refused to review a videotape of the housing unit and refused to permit Johnson to call witnesses. Johnson lost his challenge to the disciplinary report and was confined in segregation from July 26, 2003, until August 1, 2003 for disobeying Coro's order.

After completing his period in segregation, Johnson shared a cell with inmate Sawicki. Inmate Deramo, a member of the Latin Kings, was extorting inmate Sawicki. On July 25, 2003,[2] when Johnson left his cell to go to recreation, Deramo assaulted Johnson causing him to suffer injuries to his head, face and teeth. Johnson was taken to the University of Connecticut Health Center. Five medical staples were placed in his head and the dentist placed a wire brace in his mouth to enable the gums and nerves to heal. Several days later, on a Saturday, the brace fell out. On the following Monday, Johnson was seen again by the dentist. The dentist took x-rays and determined that Johnson needed more dental work.

---

[2]In various sections of his complaint, Johnson alleges that this assault occurred on July 25, 2003, did not occur until after he left segregation, and occurred prior to July 7, 2003. The medical reports attached to the complaint state that the assault occurred on July 25, 2003. The court credits that date in the contemporaneous reports.

Johnson was subsequently transferred to the Cheshire Correctional Institution.  On August 18, 2003, Johnson complained to defendants Lantz, Dzurenda, Shea and Quiros about his dental treatment.  In response, the Utilization Review Committee approved further treatment and another appointment for Johnson was scheduled at the University of Connecticut Health Center.

III.    Discussion

Defendants move to dismiss the complaint on eight grounds: (1) any claims for damages against defendants in their official capacities are barred by the Eleventh Amendment; (2) Johnson's non-monetary claims are moot; (3) Johnson was not deprived of a protected liberty interest; (4) Johnson fails to state a claim that any defendants failed to protect him from harm; (5) Johnson's claims regarding his transfer are conclusory; (6) Johnson fails to state a claim for deliberate indifference to his medical needs; (7) Johnson has not exhausted his administrative remedies; and (8) defendants are protected by qualified immunity.

A.      Eleventh Amendment

Defendants contend that the Eleventh Amendment bars any claims for damages against them in their official capacities.

Generally, a suit for recovery of money may not be maintained against the state itself, or against any agency or department of the state, unless the state has waived its sovereign immunity under the Eleventh Amendment.  See Florida Dep't of State v. Treasure Salvors, 458 U.S. 670, 684 (1982).  Section 1983 does not override a state's Eleventh Amendment immunity.  See Quern v. Jordan, 440 U.S. 332, 342 (1979).  The Eleventh Amendment immunity, which protects the state from suits for monetary relief, also protects state officials sued for damages in their official capacity.  See Kentucky v. Graham, 473 U.S. 159 (1985).  A suit against a defendant in

4

his official capacity is ultimately a suit against the state if any recovery would be expended from the public treasury. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101 n.11 (1984).

Johnson names all defendants in their official and individual capacities and does not state that he seeks damages from defendants in their individual capacities only. Thus, to the extent that the complaint may be construed to seek damages from defendants in their official capacities, this relief is barred by the Eleventh Amendment.

In opposition, Johnson only argues that he may obtain damages from defendants in their individual capacities. Thus, defendants' motion to dismiss is granted as to all claims for damages against defendants in their official capacities.

B.   Claims for Declaratory and Injunctive Relief

Defendants next argue that all claims for non-monetary relief are moot because Johnson is no longer housed at the MacDougall-Walker Correctional Institution or the Cheshire Correctional Institution.

Johnson seeks unspecified declaratory and injunctive relief. The Second Circuit has held that an inmate's request for injunctive relief against correctional staff or conditions of confinement at a particular correctional institution becomes moot when the inmate is discharged or transferred to a different correctional institution. See Mawhinney v. Henderson, 542 F.2d 1, 2 (2d Cir. 1976). See also Martin-Trigona v. Shiff, 702 F.2d 380, 386 (2d Cir. 1983) ("The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed"). Other courts concur with this result. See, e.g., McAlpine v. Thompson, 187 F.3d 1213, 1215 (10th Cir. 1999) (noting that an inmate's claim for prospective injunctive relief

regarding conditions of confinement is rendered moot upon his release from confinement); Lavado v. Keohane, 992 F.2d 601, 605 (6th Cir. 1993) (holding that inmate's suit for declaratory judgment as to whether correctional officers violated his constitutional rights by opening his privileged mail outside his presence was rendered moot by inmate's release from prison); Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (holding that inmate's claims for injunctive and declaratory relief concerning prison conditions were moot when prisoner had been moved to another prison unit).

This action concerns alleged incidents occurring at the MacDougall-Walker Correctional Institution and the medical care provided to Johnson at that facility and at the Cheshire Correctional Institution. Court records reveal that Johnson now is confined at the Carl Robinson Correctional Institution. Thus, any requests for declaratory and injunctive relief against defendants who are employed at the MacDougall-Walker or Cheshire Correctional Institutions, namely defendants Carter, Wright, Cleaver, Coro, Dzurenda and Quiros, are now moot. Defendants also state that defendant Shea no longer is employed by Correctional Managed Health Care, the division of the University of Connecticut Health Center charged with providing medical care to inmates. Thus, the motion to dismiss is granted as to all claims for declaratory and injunctive relief against defendants Carter, Wright, Cleaver, Coro, Dzurenda, Quiros and Shea.

The defendants state that defendants Lantz and Ottolini are responsible for inmates in all correctional institutions. Thus, any claim for injunctive or declaratory relief against them would not be rendered moot by Johnson's transfer. Defendants' motion to dismiss is accordingly

denied on this ground as to the claims for declaratory and injunctive relief against defendants Lantz and Ottolini.

      C.      <u>Claim for Denial of Due Process</u>

Johnson alleges that he was denied due process at the disciplinary hearing concerning the charge by Correctional Officer Coro because the hearing officer refused to review the videotape of the housing unit and Johnson was not permitted to call witnesses. Defendants contend that Johnson's claim fails because he was not deprived of a protected liberty interest.

To state a claim for violation of procedural due process, Johnson first must show that he had a protected liberty interest and, if he had such an interest, that he was deprived of that interest without being afforded due process of law. <u>See</u> <u>Tellier v. Fields</u>, 230 F.3d 502, 511 (2d Cir. 2000) (citations omitted). In accordance with the Supreme Court's decision in <u>Sandin v. Conner</u>, 515 U.S. 472 (1995), the Second Circuit applies a two-part test to determine whether an inmate possesses a protected liberty interest. <u>See</u> <u>id.</u> An inmate has a protected liberty interest "only if the deprivation . . . is atypical and significant and the state has created the liberty interest by statute or regulation." <u>Id.</u> (citations and internal quotation marks omitted).

Johnson challenges the disciplinary charge that resulted in the sanction of confinement in segregation from July 26, 2003, until August 1, 2003[3]. Segregation is not, by itself, a violation of a liberty interest. <u>See</u> <u>Russell v. Scully</u>, 15 F.3d 219, 221 (2d Cir. 1993); <u>see also</u> <u>Frazier v. Coughlin</u>, 81 F.3d 313, 317-18 (2d Cir. 1996) (holding that 120 day confinement in segregation followed by 30 day loss of recreation, commissary privileges, packages and telephone use did not

---

[3] Johnson stated in his opposition to the Motion to Dismiss that he was in segregation from June 9, 2003 to June 20, 2003. Even if that were true, it would not change the analysis and outcome here.

state a cognizable claim for denial of due process); Rosario v. Selsky, No. 94 Civ. 6872, 1995 WL 764178, at *3 (S.D.N.Y. Dec 28, 1995) (holding that 120 days confinement in special housing unit with loss of privileges was not punishment "qualitatively different" from punishment normally suffered by one in prison).

  The Second Circuit has not adopted a bright line test to determine when the period of confinement in segregation may constitute an "atypical and significant hardship." However, "the decisions in the Second Circuit are unanimous that keeplock or [segregated housing unit] confinement of 30 days or less in New York prisons is not 'atypical or significant hardship' under Sandin." Williams v. Keane, No. 95 CIV. 0379 AJP JGK, 1997 WL 527677, at *6 (S.D.N.Y. Aug. 25, 1997) (citing cases). See also Nicholson v. Murphy, No. 3:02cv1815(MRK), 2003 WL 22909876, at *10-*11 (D. Conn. Sept. 17, 2003) (holding that confinement in segregation for thirty days or less is not an atypical and significant hardship); Fine v. Gallow, No. 3:97cv497(SRU), 2000 WL 565232, at *9 (D. Conn. Mar. 28, 2000) (granting defendants' motion for summary judgment on ground that two sanctions of five days' confinement in punitive segregation and fifteen days confined to quarters, and seven days' confinement in punitive segregation, fifteen days confined to quarters and thirty days' loss of commissary privileges did not constitute an atypical and significant hardship); McNellis v. Meachum, Civ. No. 2:92cv936 (PCD) (D. Conn. Oct. 4, 1995) (holding that thirty-day period of disciplinary segregation does not give rise to liberty interest under Sandin).

  Johnson has alleged no other facts suggesting that the sanction he received was qualitatively different from ordinary prison life. Thus, the court concludes that Johnson's seven day confinement in segregation by itself is not an "atypical and significant hardship" and does

not give rise to a liberty interest under Sandin. Because Johnson has not alleged the deprivation of a protected liberty interest, his due process claim fails. Defendants' motion to dismiss is granted as to the claim for denial of due process.

      D.      Failure to Protect Claim

Johnson also alleges that defendants failed to protect him from the assault by inmate Deramo. The Eighth Amendment's proscription against cruel and unusual punishment imposes a duty on prison officials to "'take reasonable measures to guarantee safety of the inmates.'" Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)). This duty includes protecting inmates from harm from other inmates. See id.; Fischl v. Armitage, 128 F.3d 50, 55 (2d Cir. 1997).

To establish a constitutional violation in this context, a prisoner must show that he was "incarcerated under conditions posing a substantial risk of serious harm," Farmer, 511 U.S. at 834, and that the prison official showed "deliberate indifference" to the prisoner's health or safety. Deliberate indifference exists where "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of fact from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. See Hayes v. New York City Dep't Of Corrections, 84 F.3d 614, 620 (2d Cir. 1996) (holding that prison official possesses culpable intent to support a claim of deliberate indifference where he "has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm."). For example, correctional staff would be on notice of a substantial risk of serious harm where there has been prior hostility between inmates, or a prior assault by one inmate on another, and those inmates

are not kept from contact from one another.  See, e.g., Ayers v. Coughlin, 780 F.2d 205, 209 (2d Cir. 1985) (inmate plaintiff stated claim for failure to protect where he alleged that correctional official knew inmate who harmed plaintiff previously has issued death threats against him); Morales v. DOC, 842 F.2d 27, 30 (2d Cir. 1983) (allegation that defendant knew that inmate who assaulted plaintiff in his sleep previously had attacked him was sufficient to state claim for failure to protect).

Johnson alleges that inmate Deramo was transferred to the MacDougall-Walker Correctional Institution soon before the assault occurred and that he was attempting to extort Johnson's cellmate.  Johnson does not allege that he had any prior contact with Deramo or that Deramo had previously threatened him.  More important, Johnson alleges no fact suggesting that any of the defendants were or should have been aware of any threat to Johnson.  The fact that Deramo was an alleged gang member and had recently been transferred from a chronic discipline program is insufficient by itself to demonstrate the knowledge required to state a failure to protect claim.

Johnson has alleged no facts suggesting that any defendant was aware that he faced a substantial risk of serious harm and disregarded that risk.  Thus, he fails to state a claim that defendants failed to protect him from harm.  Defendants' motion to dismiss is thus granted as to the failure to protect claim.

    E.    Claim Regarding Transfer

Johnson challenges his transfer to the Cheshire Correctional Institution.  He argues, without alleging any factual support, that he was transferred to "cover up" the assault by Deramo. (See Compl. at 2.)  However, in an August 21, 2003 letter to the grievance coordinator, which is

attached to the complaint, Johnson states that he was transferred for his own safety after the assault.  An inmate has no inherent right to remain in any particular correctional facility.  See Olim v. Wakinekona, 461 U.S. 238, 248 (1983) (inmates have no right to be confined in a particular state or a particular prison within a given state); Meachum v. Fano, 427 U.S. 215, 225 (1976) (transfer among correctional facilities, without more, does not violate inmate's constitutional rights, even where conditions in one prison are "more disagreeable" or the prison has "more severe rules); see also Asquith v. Department of Corrections, 186 F.3d 407, 410, 411 (3d Cir. 1999) (holding that inmates have no protected liberty interest in remaining in a preferred correctional facility); Russell v. Scully, 15 F.3d 219 (2d Cir. 1993) (inmates have no due process interest in being confined in a certain location within a prison).

      Johnson alleges no facts suggesting that he was transferred for any improper reason.  Because Johnson has no constitutionally protected right to remain in a particular correctional facility or be transferred to another, there is no legal basis for his claim.  See Barr v. Abrams, 810 F.2d 358, 363 (2d Cir. 1987) ("complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning").  Thus, defendants' motion to dismiss is granted as to Johnson's claim regarding his transfer.

      F.    Claim for Deliberate Indifference to Medical Needs

      Johnson also challenges the medical and dental care he was provided following the assault.  He receive treatment while confined at the MacDougall-Walker Correctional Institution and at the Cheshire Correctional Institution.

Deliberate indifference by prison officials to a prisoner's serious medical and dental need constitutes cruel and unusual punishment in violation of the Eighth Amendment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). To prevail on such a claim, however, Johnson must demonstrate "acts or omissions sufficiently harmful to evidence deliberate indifference" to his dental medical need. Id. at 106. He must show intent to either deny or unreasonably delay access to needed dental care or the wanton infliction of unnecessary pain by prison personnel. See id. at 104-05.

Mere negligence will not support a section 1983 claim; "the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law." Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003). Thus, "not every lapse in prison medical care will rise to the level of a constitutional violation," id.; rather, the conduct complained of must "shock the conscience" or constitute a "barbarous act." McCloud v. Delaney, 677 F. Supp. 230, 232 (S.D.N.Y. 1988) (citing United States ex rel. Hyde v. McGinnis, 429 F.2d 864 (2d Cir. 1970)). Inmates do not have a constitutional right to the treatment of their choice. See Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986). Thus, mere disagreement with prison officials about what constitutes appropriate care does not state a claim cognizable under the Eighth Amendment. See Ross v. Kelly, 784 F. Supp. 35, 44 (W.D.N.Y.), aff'd, 970 F.2d 896 (2d Cir.), cert. denied, 506 U.S. 1040 (1992).

There are both subjective and objective components to the deliberate indifference standard. See Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994), cert. denied sub nom. Foote v. Hathaway, 513 U.S. 1154 (1995). The alleged deprivation must be "sufficiently serious" in objective terms. Wilson v. Seiter, 501 U.S. 294, 298 (1991). See also Nance v. Kelly, 912 F.2d

605, 607 (2d Cir. 1990) (Pratt, J., dissenting) ("'serious medical need' requirement contemplates a condition of urgency, one that may produce death, degeneration, or extreme pain"). The Second Circuit has identified several factors that are highly relevant to the inquiry into the seriousness of a medical condition: "'[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" Chance v. Armstrong, 143 F.3d 698, 702 (2d. Cir. 1998) (citation omitted). In addition, where the denial of treatment causes plaintiff to suffer a permanent loss or life-long handicap, the medical need is considered serious. See Harrison v. Barkley, 219 F.3d 132, 136 (2d Cir. 2000).

      Johnson suffered head injuries requiring five staples and dental injuries requiring a wire brace and recommendations for root canal and other procedures. The court concludes that Johnson's medical and dental needs satisfies the objective component of the standard.

      In addition to demonstrating a serious medical need to satisfy the objective component of the deliberate indifference standard, though, Johnson also must present evidence that, subjectively, the charged prison official acted with "a sufficiently culpable state of mind." Hathaway, 37 F.3d at 66. "[A] prison official does not act in a deliberately indifferent manner unless that official 'knows and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

The assault occurred at MacDougall-Walker Correctional Institution. Immediately following the assault, Johnson was taken to the medical unit and transported to the University of Connecticut Health Center where he was treated and received pain medication. After he returned to the correctional facility, the brace in his mouth became detached. Because this occurred on a Saturday, the institutional dentist was not working. Johnson was seen by the dentist on the following Monday. The dentist took x-rays and determined that more dental work was required. Sometime after that visit, Johnson was transferred to Cheshire Correctional Institution.

Johnson has alleged no fact suggesting that any of the defendants assigned to the MacDougall-Walker Correctional Institution were deliberately indifferent to his medical need. In fact, none of the defendants, Carter, Cleaver, Wright and Coro, are specifically referenced with regard to the provision of medical care at the MacDougall-Walker Correctional Institution. The court thus concludes that Johnson fails to state a claim for deliberate indifference to his medical needs against these defendants.

Johnson also alleges that he did not receive dental care at the Cheshire Correctional Institution after his transfer. He does not allege whom he contacted for care upon his arrival. Johnson does allege that, on August 18, 2003, he complained to defendants Dzurenda, Quiros, Shea and Lantz about his need for dental care. (See Compl. at 3.) Johnson further alleges that "as a result an U.R.C. dental procedure was ordered after my grievance was upheld." (Compl. at 3.) Johnson has attached to his complaint various documents including: (1) his August 21, 2003 medical grievance with defendant Shea's response that the Utilization Review Committee had approved the request and that he would be notified as soon as the appointment was scheduled, (2) his August 12, 2003 inmate request with a response that a request had been forwarded to the

Utilization Review Committee, (3) an August 18, 2003 letter from defendant Quiros indicating that the matter was referred to defendant Shea, (4) a September 29, 2003 letter from Deputy Commissioner Brian K. Murphy stating that Johnson's August 11, 2003 letter to defendant Lantz had been referred to defendant Ottolini to respond to his medical concerns, and (5) an October 17, 2003 letter from defendant Ottolini stating that her staff had reviewed Johnson's medical records and reported that on August 12, 2003, the Utilization Review Committee had approved further dental treatment and that treatment had been provided on September 4, 2003.  Defendant Ottolini also told Johnson to return to sick call if further treatment were required.

Johnson has himself provided evidence that defendants Shea and Ottolini responded to his requests to defendants Quiros, Dzurenda, Shea and Lantz and that he was provided dental treatment.  Thus, the allegations and evidence attached to the complaint show that none of these defendants disregarded Johnson's need for treatment in August 2003.  Although Johnson alleges that he continues to experience pain, he does not allege that he contacted the medical department, as he was advised to do by defendant Ottolini, or filed a medical grievance regarding that medical need.  Accordingly, defendants' motion to dismiss is granted as to the claim for deliberate indifference to a serious medical need.

      G.    State Law Claims

Johnson states on the last page of his complaint "Pendent jurisdiction requested."  The court assumes that Johnson is attempting to invoke the court's supplemental jurisdiction over unspecified state law claims.

Supplemental or pendent jurisdiction is a matter of discretion, not of right.  See United Mine Workers v. Gibbs, 383 U.S. 715, 715-26 (1966).  Where all federal claims have been

dismissed before trial, pendent state claims should be dismissed without prejudice and left for resolution by the state courts.  See 28 U.S.C. § 1367(c)(3); Giordano v. City of New York, 274 F.3d 740, 754 (2d Cir. 2001) (collecting cases).

The court has granted defendants' motion to dismiss all federal claims.  To the extent that the complaint may be construed to assert related state law claims, the court declines to exercise supplemental jurisdiction over those claims.  Johnson may pursue his state law claims in state court.

IV.   Conclusion

Defendants' motion to dismiss [**doc. #33**] is **GRANTED**.  The court declines to exercise supplemental jurisdiction over any state law claims.  The Clerk is directed to enter judgment in favor of defendants and close this case.

**SO ORDERED** this 8th day of December, 2005, at Hartford, Connecticut.

    /s/ CFD
Christopher F. Droney
United States District Judge